# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**WILLIAM H. MOODY,**
        **Petitioner,**

    v.                                                           Case No. 05-C-0626

**PHILLIP KINGSTON, Warden,**
**Waupun Correctional Institution**
        **Respondent.**

---

## ORDER

Petitioner William H. Moody, a Wisconsin state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction pursuant to a no-contest plea of a number of felonies. Petitioner argues that his counsel was ineffective, that his plea was not knowing and voluntary and that the trial court deprived him of due process both by refusing to adjourn the trial and by the sentence it imposed on petitioner.

## I. BACKGROUND

### A. Facts

On the evening of April 11, 1997, petitioner went to the duplex apartment of his former partner, Pamela Landeau. Landeau heard a knock on the door, went to the door and asked who it was but got no response. Shortly thereafter, a shot came through the door. At the time, Landeau was leaning against the door. The bullet went through the left sleeve and then the left side of the sweatshirt she was wearing. She screamed, ran into the kitchen and called 911. Petitioner broke down the door, and Landeau ran with the phone into the bedroom. Petitioner followed, and the two fought for the phone. Landeau noticed that petitioner had a gun in his hand. Petitioner pointed the gun at her head and

said "I am going to kill you bitch," (Answer Ex. G at 8), and then pulled the trigger. However, the gun did not fire. Petitioner hit the gun on the heel of his hand and pointed it at Landeau's head a second time and pulled the trigger a second time. Again, the gun misfired.

Petitioner then grabbed Landeau by the arm and hit her on the head with the gun. The gun butt cut her head. Petitioner then said, "you're coming with me," and dragged her out of the house by her arm. (Answer Ex. G at 9.) He dragged her into her front yard area, but Landeau got away. She ran back into the house. Petitioner came back in and dragged her out a second time. When Landeau got away again, she ran to her neighbor's door and began kicking and hitting the door. Landeau saw the neighbor coming down the stairs, but petitioner then hit her on the head again, knocking her unconscious. He then fled the scene and was apprehended three years later in Tennessee.

The police recovered a number of live rounds at the scene, one outside of the residence and the rest inside the residence. The weapon however was never recovered. Because Landeau called 911, a portion of the altercation in her apartment was recorded on the 911 tape, including petitioner's comment, "I am going to kill you bitch."

Petitioner's theory of defense, had the case been tried, was that he never intended to kill Landeau. He claimed that the gun was not loaded at the time he pointed it at Landeau, that the gun had not broken, and that he never had bullets in it when he pointed the gun at Landeau but was merely trying to scare her. He claimed that he took the bullets out of the gun and put them in his pocket. Because he was intoxicated, some of the bullets might have fallen on the floor or underneath the porch of the house.

2

## B. Proceedings in Trial and Post-Conviction Courts

The state court of appeals summarized the proceedings in the trial and post-conviction courts as follows:

> ¶ 2 Moody was represented by four different counsel between the time he was arrested and sentenced. His first counsel moved to withdraw.[1] His second counsel also moved to withdraw, this time at Moody's request. His third counsel did not appear for a court hearing. The court ordered the State Public Defender to appoint new counsel when both Moody and the State said they had not had contact with him. Finally, Attorney Jennifer Thompson was appointed to represent him. She was appointed about six weeks before the date set for trial.
>
> ¶ 3 Thompson moved for and received a competency evaluation for Moody. Moody was found to be competent to stand trial. Thompson also moved twice to have the trial adjourned. The trial court denied these motions finding, in part, that Moody had been manipulating the system in an attempt to get an adjournment.
>
> ¶ 4 Eventually, Moody pled no contest to two counts of attempted first-degree homicide, and one count each of kidnapping, burglary while armed, and felon in possession of a firearm. The court sentenced him to thirty years on the first count of attempted homicide, thirty years to be served consecutively on the burglary, twenty years to be served concurrently on the second attempted homicide and the kidnapping charge, and two years on the felon in possession charge, also concurrent. Moody moved for postconviction relief asking that he be allowed to withdraw his pleas because they were not knowingly, intelligently, and voluntarily entered, he had received ineffective assistance of trial counsel, and the trial court erred when it refused to grant him an adjournment. Moody also moved for sentence modification.
>
> ¶ 5 The court held a <u>Machner</u>[2] hearing and concluded that Moody had not received ineffective assistance of counsel nor established a manifest injustice which would entitle him to withdraw his pleas. The court held a second hearing. It granted his motion to modify the sentence imposed on count two on the grounds that the reduction in the frequency with which parole is granted was close enough to a new factor. The court denied his request to have count two run concurrent to count one. The court reduced his sentence on the burglary charge from thirty to twenty years, thereby reducing his total sentence from sixty years to fifty.

[1]Moody's first counsel moved to withdraw because he thought he might be a witness against Moody or his girlfriend.

[2]State v. Machner, 92 Wis. 2d 797, 285 N.W. 2d 905 (Ct. App. 1979).

(Answer Ex. E at 2-3.)

## II.  HABEAS STANDARD

A federal court may grant a writ of habeas corpus only if the state court decision on the merits of the petitioner's federal claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## III.  DISCUSSION

### A.  Ineffective Assistance Claim

Petitioner argues that in rejecting his ineffective assistance of counsel claim, the state court of appeals unreasonably applied Strickland v. Washington, 466 U.S. 668 (1984). In order to establish ineffective assistance, a defendant must show that his counsel's performance was deficient and that such deficiency caused him prejudice. Id. at 687. I may dispose of an ineffective assistance claim on either ground. Id. at 697. In the context of a guilty or no-contest plea, to establish prejudice, the defendant must show that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty but would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). With respect to petitioner's claim of ineffective assistance, the state court of appeals concluded as follows:

4

¶ 8    We conclude that Moody is not able to establish either prong of the Strickland test. Moody first asserts that counsel was ineffective because she failed to obtain a ballistics expert. First, the record demonstrates that she diligently pursued obtaining such an expert, but was unable to do so. Second, and more importantly, Moody has not suggested how the ballistics expert would have helped his defense. Without such an explanation, Moody is not able to show either that counsel's performance was deficient or that he was prejudiced by it.

¶ 9    Moody also asserts that counsel was ineffective because she failed to pursue an intoxication or mental defect defense. As to the mental defect defense, counsel requested and received a competency examination of Moody. He was found to be competent. She did pursue such a defense and it did not work out. This was neither deficient nor prejudicial performance.

¶ 10   As to pursuing an intoxication defense, the State argues that this would have been inconsistent with what the defense counsel chose to pursue. We agree. Moody's defense was that he did not intend to kill the victim. He testified that he had been drinking, but he never stated that he did not know what he was doing. A defense that he was too intoxicated to know what he was doing would have explicitly contradicted his defense that he did not intend to kill her, and would have implicitly contradicted his testimony about the specific events. Again, we conclude that Moody has not established that his trial counsel's performance was deficient.

¶ 11   Moody further argues that counsel was ineffective for failing to interview all of the witnesses on the State's list. Counsel testified at the Machner hearing that she went over the list of witnesses with Moody and none of them appeared to have information which was likely to help Moody's defense. She did talk to several witnesses who she thought might provide helpful information. Again, Moody does not suggest what helpful information these other witnesses might have provided. We cannot conclude that counsel's performance was deficient.

¶ 12   The fourth basis on which Moody asserts that his trial counsel was ineffective is that she did not seek interlocutory appeals when the court denied her requests for adjournments. She testified at the Machner hearing that she did not pursue interlocutory appeals because she did not think that she could win. Further, in denying the motions, the circuit court made it quite clear that it was frustrated with what it perceived to be Moody's attempts to delay the proceedings. Trial counsel concluded that it would be better to concentrate her efforts on preparing for trial rather than pursuing an appeal she did not think she could win. Under these circumstances, we agree that this was a reasonable strategy. Once again, we conclude that Moody has not demonstrated that counsel's performance was deficient.

> ¶ 13 We further reject Moody's underlying contention that counsel could not adequately prepare for trial in the time she had available. Moody has not shown that his counsel was not able to properly prepare in that amount of time, nor are we willing to conclude that six weeks is per se unreasonable. Moody has not established that he received ineffective assistance of trial counsel.

(Answer Ex. E at 4-6.)

Petitioner first contends that Thompson was ineffective for not obtaining a ballistics expert. As indicated, the court of appeals found that petitioner failed to establish either deficient performance or prejudice. Petitioner presents nothing to suggest that the court unreasonably applied Strickland. First, Thompson diligently searched for an expert. Second, petitioner fails to show what a ballistics expert might have discovered that would have made it reasonably probable that petitioner would have gone to trial. The police did not recover petitioner's gun, thus, an expert could not have performed meaningful tests on it or on the bullet or live rounds found at Landeau's home. Further, a ballistics expert would have been of little value in countering the state's ballistic expert because the latter agreed with the premises underlying petitioner's claim that he did not intend to kill Landeau.

Second, petitioner argues that Thompson was ineffective for failing to pursue an intoxication defense. As indicated, the court of appeals rejected this claim, holding that an intoxication defense would not have succeeded and also would have conflicted with petitioner's defense that he didn't intend to kill Landeau. Petitioner presents nothing to suggest that the court of appeals unreasonably applied Strickland. It is very difficult for a defendant to prevail on an intoxication defense, and many of petitioner's actions and words

6

on the night in question, including his statement that he was going to kill Landeau, indicated that he was not too drunk to form an intent to kill.

Next, petitioner contends that his counsel was ineffective for failing to interview witnesses. As previously indicated, the court of appeals found that Thompson did not perform deficiently in this respect, and in any case, that petitioner did not indicate what additional information she might have uncovered that would have been helpful. Petitioner presents nothing to suggest that in reaching these conclusions, the court of appeals unreasonably applied Strickland.

Fourth, petitioner argues that his trial counsel was ineffective for failing to pursue interlocutory appeals of the trial court's denials of her motions to postpone the trial. The state court of appeals rejected this argument again, holding that petitioner had shown neither deficient performance nor prejudice. Petitioner presents nothing indicating that this conclusion was unreasonable. An interlocutory appeal would have been unlikely to succeed inasmuch as the trial court indicated that petitioner was manipulating the process.

Finally, petitioner makes a general argument that Thompson did not have sufficient time to prepare for trial and that as a result she was unprepared. The court of appeals rejected this claim, stating that petitioner failed to show that six weeks was not enough time to prepare for trial or that counsel was unprepared. Petitioner presents nothing to suggest that either of these conclusions was unreasonable.

In sum, petitioner makes numerous claims as to why his counsel was ineffective. The court of appeals rejected all of them. In the present proceeding, petitioner does not establish that the court unreasonably applied Strickland in any respect. He does not establish that Thompson performed inadequately or that if she had done something

different, he would not have pleaded no contest. The facts of the case were straightforward, and counsel had little to work with.

**B.     Claim that Plea Was Involuntary**

Petitioner also argues that the court of appeals unreasonably upheld the post-conviction court's refusal to allow him to withdraw his no-contest plea on the ground that it was not knowing and voluntary. As to this claim, the court of appeals concluded as follows:

> ¶ 14    Moody next argues that the trial court erred when it refused to allow him to withdraw his plea. After sentencing, a plea may be withdrawn only if doing so is necessary to correct a manifest injustice. State v. Booth, 142 Wis. 2d 232, 235, 418 N.W.2d 20 (Ct. App. 1987). A defendant has the burden of proving a manifest injustice by clear and convincing evidence. State v. Bentley, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). The manifest injustice test can be satisfied by a showing that the defendant received ineffective assistance of counsel. Id.
>
> ¶ 15    Moody asserts that his plea was not knowingly, intelligently, and voluntarily entered because he was "misinformed as to the extent of counsel's lack of preparation for trial," his pleas were coerced because he was told he had no options, and he was incorrectly advised about the possibility of parole being granted. We have already concluded that he did not receive ineffective assistance of counsel and rejected his argument that counsel was not prepared. Further, counsel testified that she did not tell him he had no options, but rather that she said in light of the State's evidence, his defense would be difficult to prove. Further, at the plea hearing the court specifically asked Moody if anyone had forced, threatened, or coerced him into entering the plea. Moody answered no. Again we find no merit to this argument.
>
> ¶ 16    The third basis Moody asserts for being allowed to withdraw his plea is that he was incorrectly advised about the likelihood that he would be granted parole. Again, there is simply no support in the record for this assertion. We conclude that the circuit court properly determined that Moody was not entitled to withdraw his pleas.

(Answer Ex. E at 6-7.)

A guilty plea is valid only if entered voluntarily, knowingly and intelligently. Brady v. United States, 397 U.S. 742, 748 (1970). Where a defendant pleads guilty to a crime, he must be informed of the elements of the crime. See Henderson v. Morgan, 426 U.S. 637, 647 n.18 (1976). The constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own counsel. Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005). The record must also demonstrate that the defendant knew of the rights he was waiving by pleading guilty. Boykin v. Alabama, 395 U.S. 238, 243 (1969); see also Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938).

Petitioner presents nothing to suggest that the court of appeals's determination that he entered the plea knowingly and voluntarily was unreasonable. He argues that his plea was involuntary because his attorney misinformed him as to the level of her preparation for trial, that she told him that he had no options, and incorrectly advised him about the possibility of parole being granted. The court of appeals rejected these arguments because it found that petitioner did not receive ineffective assistance. Thompson testified that she did not tell petitioner that he had no options, but rather she said that in light of the state's evidence, his defense would be difficult to prove. Petitioner himself testified that no one had coerced him into entering a plea. Thompson also told petitioner that she did not think that his theory of defense would be plausible to a jury. In addition, the 911 tape was extremely damaging. Thus, petitioner's contention that the court of appeals unreasonably determined his plea complied with constitutional requirements is rejected.

9

### C. Refusal to Adjourn Case

Petitioner argues that the court of appeals unreasonably rejected his claim that the trial court denied him due process by refusing to adjourn the case. On this issue, the court of appeals stated:

> Although we agree with the State that Moody waived the right to challenge these orders when he entered his plea, we will nonetheless address the issue on the merits. The decision whether to grant an adjournment is left to the trial court's discretion. State v. Leighton, 2000 WI App 156, ¶ 27, 237 Wis. 2d 709, 616 N.W.2d 126. Moody argues that this was error because counsel could not prepare and present a defense and obtain a ballistics expert. One of the factors to be considered by the court is whether the delay is for "legitimate reasons or whether its purpose is dilatory." Id. at ¶ 28. In this case, the trial court found that Moody had been manipulating the system in order to delay his trial. Further, we have already concluded that counsel had adequate time to prepare and that Moody has not established how a ballistics expert would have helped his defense. We conclude that the court did not erroneously exercise its discretion when it denied the requests for adjournments.

(Answer, Ex. E at 7.)

Petitioner presents nothing to indicate that the court's decision was unreasonable. Although an arbitrary refusal to grant a justifiable request for delay can deprive a defendant of due process, Ungar v. Sarafite, 376 U.S. 575, 589 (1964), the trial court's refusal to adjourn the present case was not arbitrary. As discussed, the case was relatively straightforward, and petitioner's counsel had adequate time to prepare for trial.

### D. Sentencing Argument

Petitioner argues that Thompson was ineffective at sentence and that the trial court denied him due process at sentence by failing to advise him regarding the potential length of his sentence. Petitioner has procedurally defaulted this claim because he did not make

10

it in state court. He made a different sentencing argument in state court, namely a state law argument that he was entitled to a reduced sentence based on a new factor. With respect to that argument, the court of appeals ruled as follows:

> ¶ 18  Moody's final argument is that the circuit court erred in not considering the "radical reduction in parole grants to be a new factor" warranting sentence modification. This argument is puzzling in light of the circuit court's postconviction decision to reduce the sentence on count two from thirty to twenty years. The circuit court did this because it found that the reduction in the frequency with which parole has been granted was sufficiently close to a new factor to warrant reduction. Moody does not acknowledge this reduction, but appears to be arguing that the court should have reduced his sentence even more. Moody has not established that he is entitled to any further reduction in his sentence.

(Answer Ex. E at 7-8.)

It is clear from the court's ruling that the court was addressing a different argument than petitioner makes here. In any case, his claims that neither the trial court nor Thompson advised him about the sentence he could receive are without merit. The record reflects that the court engaged in a detailed colloquy with petitioner about the terms of his plea agreement and his potential sentence. The record further indicates that Thompson advised petitioner in detail about his potential sentences and advocated vigorously on his behalf at sentencing.

## IV.  CONCLUSION

Therefore, for the foregoing reasons,

**IT IS ORDERED** that the petitioner's application is **DENIED** and this case is **DISMISSED**.

11

Dated at Milwaukee, Wisconsin this 23 day of July, 2007.

/s_____
LYNN ADELMAN
District Judge